STATE of Minnesota, Respondent,

v.

Gary Neil ROBINSON, Appellant.

No. C4–91–76.

Court of Appeals of Minnesota.

Nov. 5, 1991.

Review Granted Dec. 23, 1991.

**898**

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Duluth, Brian D. Simonson, Asst. Co. Atty., Hibbing, for respondent.

John M. Stuart, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by HUSPENI, P.J., and NORTON, and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant Gary Neil Robinson was convicted of second degree criminal sexual conduct and sentenced to 37 years in prison pursuant to Minn.Stat. 609.346, subd. 2a (Supp.1989). Robinson challenges his exclusion from the minor child's competency hearing, the admission of evidence of prior convictions, and his sentence. We affirm in part, reverse in part and remand for sentencing.

## FACTS

Following a jury trial, Robinson was convicted of second degree criminal sexual conduct for offenses against his four-year-old daughter H.R. Minn.Stat. § 609.343. subd. 1(a) (Supp 1989). ("complainant is under 13 years of age and the actor is more than 36 months older than the complainant").

Robinson has two previous sexual assault convictions for offenses committed against his two stepdaughters. As a result he was sentenced to a mandatory 37–year term of imprisonment pursuant to Minn. Stat. § 609.346, subd. 2a. The trial court indicated that if section 609.346, subd. 2a was found inapplicable on appeal, it intended to depart from the sentencing guidelines and sentence appellant to the statutory maximum of 20 years imprisonment. Minn.Stat. § 609.343, subd. 2 (Supp.1989).

## ISSUES

I. Did the trial court's exclusion of appellant from the hearing to determine H.R.'s competency as a witness prejudice his rights?

II. Did the trial court err by admitting evidence of appellant's prior sexual offense convictions?

III. Did the trial court err by sentencing appellant to the mandatory 37–year term of imprisonment under Minn.Stat. § 609.346, subd. 2a?

A. Did the trial court err by concluding appellant's two previous convictions under the repealed intrafamilial sexual abuse statutes subjected him to the mandatory 37–year prison term pursuant to Minn.Stat. § 609.346, subd. 2a?

B. Does appellant's sentence violate the constitutional provision against ex post facto laws?

1. Did the trial court err in submitting a special interrogatory to the jury concerning the date of appellant's offenses which was relevant to the sentence imposed?

2. Was the trial court bound by the jury's answer to the special interrogatory?

3. Did the trial court erroneously instruct the jury concerning its answer to the special interrogatory?

C. Is the imposition of a 37-year sentence for repeat sex offenders under Minn.Stat. § 609.346, subd. 2a cruel and unusual punishment?

## ANALYSIS

### I.

After a separate hearing the trial court concluded Robinson's daughter, H.R., was competent to testify. Robinson argues his exclusion from this hearing amounted to reversible error. We disagree.

In *State v. Thompson*, 430 N.W.2d 151 (Minn.1988) the supreme court stated that the exclusion of a defendant from the competency hearing of a child witness does not violate the confrontation clause or due process clause of the federal constitution. *Id.* at 152 (citing *Kentucky v. Stincer*, 482 U.S. 730, 744-45, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987)). The court observed, however, that Minn.R.Crim.P. 26.03, subd. 1, gives a defendant the right to be present at "every stage of the trial." *Id.* It then noted:

> Because we believe that a competency hearing is a "stage of the trial" under Minn.R.Crim.P. 26.03, subd. 1, we conclude that a criminal defendant has a right to be present at a hearing to determine the competency of a witness, even a child witness. Therefore, if defendant or his attorney had asserted defendant's right to be present in this case, it would have been error for the trial court to deny defendant that right and we would have to determine whether or not the error was prejudicial.

*Id.* at 152-53.

Here Robinson asserted his right to be present, but the trial court denied it based on *Moll v. State*, 351 N.W.2d 639 (Minn. App.1984). In *Moll*, this court held a defendant does not have the right to attend the competency hearing of a child witness because defendant's presence would serve no other purpose other than to intimidate the child. *Id.* at 644. *Moll*, however, was

implicitly overruled by *Thompson*. It is clear that based on *Thompson*, Robinson had a right to be present at the competency hearing. This does not end our inquiry however. We must also determine whether Robinson's exclusion was prejudicial.

After carefully reviewing the record we hold that Robinson was not prejudiced by being excluded from H.R.'s competency hearing for three reasons. First, the transcript clearly supports the trial court's conclusion that H.R. was competent to testify. Second, there is no indication that Robinson's presence at the hearing would have been useful in making a more reliable determination of H.R.'s competency. *See Stincer*, 482 U.S. at 747, 107 S.Ct. at 2668. Finally, Robinson presents nothing specific about his relationship with H.R. that could have assisted either his attorney or the trial court in asking questions that would have resulted in a more assured determination of competency. Under these circumstances, Robinson's exclusion from the competency hearing was not prejudicial.

### II.

Robinson argues the trial court erred in admitting evidence of two prior sexual offense convictions. In 1983 Robinson pleaded guilty to two counts of second degree intrafamilial sexual abuse involving both of his stepdaughters. In 1985, appellant again pleaded guilty to second degree intrafamilial sexual abuse for an offense against one of his stepdaughters. The trial court permitted evidence of these convictions at trial. *See State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

Robinson contends the probative value of the *Spreigl* evidence was outweighed by its potential for unfair prejudice. We disagree. *Spreigl* evidence may be admissible if the trial court finds the direct or circumstantial evidence is otherwise weak or inadequate and it is necessary to support the state's burden of proof. *State v. DeWald*, 464 N.W.2d 500, 503 (Minn.1991). In this case the *Spreigl* evidence was crucial since other evidence of

Robinson's guilt was far from overwhelming. Moreover, the *Spreigl* evidence was also relevant to show a common scheme or plan. *See State v. Slowinski*, 450 N.W.2d 107, 113 (Minn.1990). Further, the trial court gave proper cautionary instructions to the jury both before introduction of the *Spreigl* evidence and at the close of evidence. *See Slowinski*, 450 N.W.2d at 114. Under these circumstances, the trial court acted within its discretion in admitting evidence of the prior convictions.

### III.

Robinson argues the trial court erred by sentencing him to the mandatory 37-year prison term provided for in Minn.Stat. § 609.346, subd. 2a (Supp 1989). Subdivision 2a provides:

(a) The court shall sentence a person to a term of imprisonment of 37 years, notwithstanding the statutory maximum sentences under sections 609.342 and 609.343 if:

(1) the person is convicted under section 609.342 or 609.343; and

(2) the person has two previous sex offense convictions under section 609.-342, 609.343, or 609.344.

(b) Notwithstanding sections 609.342, subdivision 3; and 609.343, subdivision 3; and subdivision 2, the court may not stay imposition of the sentence required by this subdivision.

Robinson advances three arguments: (A) by the statute's own terms, subdivision 2a does not apply to him; (B) application of subdivision 2a to him violates the prohibition against ex-post facto laws; and (C) the imposition of a 37-year sentence is cruel and unusual punishment.

### A.

Robinson's argument that the statute on its face does not apply to this case is unpersuasive. Because Robinson's current conviction is for second degree criminal sexual conduct in violation of Minn.Stat. § 609.-343, subd. 1(a), the requirement of subdivision 2a(a)(1) is met. Subdivision 2a(a)(2) requires, however, the two prior convictions be under sections 609.342, 609.343 or 609.344. Robinson argues because his prior convictions were for intrafamilial sexual abuse under Minn.Stat. § 609.3642, which was repealed in 1985, the requirement in subdivision 2a(a)(2) has not been met. This argument fails for two reasons.

■ First, when the legislature repealed section 609.3642, it stated that one of the purposes of the act was to merge the crimes of "intrafamilial sexual abuse" and "criminal sexual conduct." 1985 Minn. Laws ch. 286. Thus, section 609.3642 was, in effect, merged into section 609.343. When a law is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing law, the earlier law shall be construed as continued in active operation. Minn.Stat. § 645.37 (1990). All rights and liabilities incurred under the earlier law are preserved and may be enforced. *Id.* Therefore, Robinson's crimes come under subdivision 2a(a)(2).

■ Second, Minn.Stat. § 609.346, subd. 3 defines a "sex offense" as:

A violation of sections 609.342 to 609.345 or *any similar statute of the United States, or this or any other state.*

(Emphasis added.) Robinson argues the narrower definition of a prior sex offense in subdivision 2a(a)(2) controls and therefore shows the legislature intended to limit the 37-year mandatory term to specific cases. We find no such legislative intent. We presume the legislature did not intend an absurd or unreasonable result. *See* Minn.Stat. § 645.17(1) (1990). Adopting Robinsons's interpretation would produce an absurd or unreasonable result. For example, the 37-year sentence could never be triggered where a defendant has been convicted of previous sex offenses in another state. Accordingly, we hold that Minn. Stat. § 609.346, subd. 2a applies to Robinson.[1]

---

1. Minn.Stat. § 609.346, subd. 2a affects Robinson only if his offenses occurred after August 1, 1989. We do not make such a determination in this case. See Section III.B. of this opinion for further discussion concerning the date of Robinson's offenses.

## B.

Robinson argues that even if he is subject to Minn.Stat. § 609.346, subd. 2a, the statute does not apply to him because his offenses occurred before August 1, 1989. Thus, application of section 609.346, subd. 2a would violate the constitutional provisions against ex-post facto laws. We acknowledge that if Robinson's offenses occurred before August 1, 1989, he is not subject to the mandatory 37–year prison term. However, because of a jury instruction error, we are unable to review the trial court's determination that Robinson's offenses occurred after August 1, 1989. Thus we reverse Robinson's sentence and remand to the trial court to resentence Robinson in accordance with this opinion.

The complaint charged Robinson with sexually abusing H.R. "on or about the period of 1987 through 1989." Trial testimony did not conclusively establish when the abuse took place. To aid itself in determining when the abuse occurred, the trial court submitted a special verdict to the jury. The questions asked:

> If you find defendant guilty of Criminal Sexual Conduct in the First Degree *or* guilty of the lesser included offense of Criminal Sexual Conduct in the Second Degree, you have an additional issue to determine, and it will be put to you in the form of questions which will appear on this verdict form as follows:
> Did the sexual conduct take place before August 1, 1989?
>     ANSWER _____
> Did the sexual conduct take place after August 1, 1989?
>     ANSWER _____
> Did the sexual conduct take place both before and after August 1, 1989?
>     ANSWER _____

The interrogatory was accompanied by the following instruction to the jury:

> You will answer one of these questions "Yes". If you have reasonable doubt as to when the sexual conduct took place, you should answer "Yes" to the question relating to "both before and after August 1, 1989."

The submission of special interrogatories to the jury raises several novel issues in Minnesota. We must determine: (1) whether the submission of the special interrogatories was proper; (2) the effect of the jury's answer to the interrogatories; and (3) if the jury instruction accompanying the interrogatories was in error, its effect on this case.

■ 1. In criminal trials, special interrogatories are generally disfavored. Nevertheless, some courts have approved their use in certain situations. Only one Minnesota case has discussed the use of special interrogatories in criminal cases. In *State v. Olson*, 379 N.W.2d 524 (Minn. 1986), the supreme court discussed the use of a special interrogatory in a case involving Minn.Stat. § 609.53 (1984) (receiving stolen property). The court noted:

> [I]t is the jury's function to decide whether the defendant is guilty or not guilty of the crime charged and that it is the trial court's function to make any findings of fact bearing on the sentence.

*Id.* at 526. The offense of receiving stolen property, however, had three severity levels based on the value of the property. It appeared the legislature intended the jury to determine the value of the property. Thus the court concluded:

> It may be that in an appropriate case involving an offense under section 609.53 the trial court should * * * submit a special interrogatory inquiring whether or not the value of the stolen property exceeded $2500.

*Id.* at 527.[2]

We are left with the proposition that special interrogatories may be used in "appropriate" criminal cases. However, the decisions from courts of this state do not provide us any guidance in resolving the issues in this case. Therefore we make an

---

**2.** The dissent noted that this state has never adopted the use of special interrogatories in criminal cases because it is the jury's function to decide guilt, and their use would impede the trial court's function to make findings of fact bearing on the sentence. *Olson,* 379 N.W.2d at 528.

inquiry of other jurisdictions to see how special interrogatories have been utilized in criminal cases.

In *United States v. Romo*, 914 F.2d 889 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991), the defendants argued the special verdict that went to the jury improperly requested the jury to determine the amount of cocaine involved. The court of appeals disagreed holding the trial court must determine the amount of drugs involved, not the jury.

> The judge can, however, give the jury a special verdict and consider its answer as an aid to making his independent determination. * * * Thus, since the *jury's answers are not binding on the judge*, defendants are not entitled to particular phrasing in the special verdict form, and we believe are not prejudiced by the court's consideration of the answers given by the jury.

*Id.* at 895 (emphasis added).

In *United States v. Wayne*, 903 F.2d 1188, 1196–97 (8th Cir.1990), the Eighth Circuit Court of Appeals determined the defendant's sentence under the new sentencing guidelines did not violate the ex post facto clause of the Constitution where there was evidence of conspiratorial conduct after November 1, 1987, the effective date of the guidelines. The court also stated:

> The jury stated in a special interrogatory that it found that the conspiracy continued beyond November 1, 1987. * * * The district court found that the conspiracy continued up to May 12, 1988, the date of Wayne's arrest. * * * This is a finding of fact which we review under the clearly erroneous standard. After reviewing the ample evidence in the record under this standard, we are satisfied that the court's finding was not clearly erroneous.

*Id.* at 1197.

In *United States v. Devine*, 934 F.2d 1325 (5th Cir.1991) the defendants relied on *Wayne*, in asserting the trial court erred in refusing to submit a special interrogatory to the jury concerning whether the conspiracy continued after the effective date of the federal sentencing guidelines. The court stated:

> [R]egardless of the special interrogatory, the *Wayne* court relied on the district court's own factual conclusion that the conspiracy continued until May 1988. Indeed, the Eighth Circuit stated in its holding that it was "satisfied that the court's finding was not clearly erroneous."
>
> \* \* \* \* \* \*
>
> [The defendants] sought a determination from the jury on a *question related to sentencing*, which was clearly not within the province of the jury to decide. In short, they did not seek an answer from the jury that would determine their guilt or innocence, but one that *would serve as no more than an advisory opinion to the judge*.

*Devine*, 934 F.2d at 1336.

In *United States v. Pforzheimer*, 826 F.2d 200 (2nd Cir.1987), the defendant argued the trial court erred in submitting special interrogatories to the jury concerning the amount of drugs involved in the offense. The court of appeals upheld defendant's conviction stating:

> [T]he use of jury interrogatories in criminal trials is not per se impermissible. * * * [W]e have recognized that it is not error for a district court to use jury interrogatories when the information sought is relevant to the sentence to be imposed.

*Id.* at 205–06.

State courts have also dealt with special interrogatories in criminal cases. For example, in *People v. Ribowsky*, 77 N.Y.2d 284, 567 N.Y.S.2d 392, 568 N.E.2d 1197 (1991), the defendant argued the trial court erred in submitting special interrogatories to the jury. The court noted special interrogatories are disfavored in criminal trials but stated:

> [T]he use of such verdicts has been approved in criminal trials where the special findings benefitted the defendant, were neither inherently prejudicial nor predeterminative of the jury's verdict or assisted the court.

*Id.* at 291, 567 N.Y.S.2d at 396, 568 N.E.2d at 1201. *See also Commonwealth v. Golston*, 373 Mass. 249, 260, 366 N.E.2d 744, 752 (1977), (no error in submission of special interrogatories to jury to serve as an "aid" to the court where no tendency to lead jury to a verdict of guilty), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 777, 54 L.Ed.2d 788 (1978).

On the other hand, some state courts have held that special interrogatories may not be used in criminal cases. In *State v. Osburn*, 211 Kan. 248, 505 P.2d 742 (1973), the Kansas Supreme Court reversed a defendant's conviction where special interrogatories had been submitted for the jury in a narcotics case. The court stated:

> In view of the differences in our civil and criminal statutes relating to verdicts it is apparent the legislature intended to preserve the time honored power of the jury to return a verdict in a criminal prosecution in the teeth of the law and the facts. Therefore we hold that special questions may not be submitted to the jury for answer in a criminal prosecution. In general the only proper verdicts to be submitted in a criminal prosecution are "guilty" or "not guilty" of the charges.

*Id.* at 255–56, 505 P.2d at 749. *See also Harris v. State*, 790 S.W.2d 568, 579–80 (Tex.Crim.App.1989) (no authority in Texas law permitting submission of special issues to a jury in a criminal case).

■ We conclude the better reasoned rule is that a special interrogatory may be used in a criminal case if it relates solely to sentencing and does not tend to lead a jury to a finding of guilt. Thus in this case, submission of the special interrogatory to the jury was not error. We recognize that jury interrogatories are generally disfavored in criminal cases and we urge great caution in their use. Nevertheless, the special interrogatory itself did not violate Robinson's right to a fair trial. The jury was instructed to answer the interrogatory only if it found appellant guilty. Thus there was no tendency the interrogatory could lead to a finding of guilt.

2. The jury answered "Yes" to the question "Did the sexual conduct take place both before and after August 1, 1989?" We must next decide the effect of the jury's answer on the sentencing court.

It is the trial court's function to make findings of fact bearing on a defendant's sentence. *Olson*, 379 N.W.2d at 526. Generally, the jury's role does not extend to the determination of the appropriate sentence. III ABA Standards for Criminal Justice, Standard 18–1.1 (1980). Plainly if the sentencing court were required to accept the jury's answer, the court's discretion in deciding the sentence would cease. Therefore we conclude the jury's answer is not binding on the court.

■ Nonetheless, while not binding on the court, the jury's answer may properly be used to guide the court in deciding the sentence. In prosecutions under Minn. Stat. § 609.346, the trial court must determine whether the conduct occurred after August 1, 1989 to ascertain whether subdivision 2a applies. This determination does not involve guilt or innocence, is integral to the sentencing decision, and involves the resolution of factual questions. Under these circumstances, the trial court may submit a special interrogatory to the jury, incorporate the jury's answer in its findings, or completely reject the jury's answer.

■ 3. The jury instruction relating to the special interrogatory was clearly erroneous. There is no authority for a court to instruct a jury if it has "reasonable doubt" about an issue, then it must make a finding adverse to the defendant. Although Robinson did not object to the instruction, such an instruction is plain error. *See* Minn.R.Crim.P. 31.02; Minn. R.Evid. 103(d). We find the instruction fundamentally misinstructed the jury and substantially affected Robinson's rights. *See State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). Therefore, we address the issue.

■ At sentencing, the judge stated he used the special verdict in concluding Robinson's offenses occurred after August 1, 1989. We hold that because the jury instruction itself was erroneous, the trial

court erred by considering the special interrogatory answer.

Because we cannot determine the weight the trial court gave to the jury's answer, we cannot decide whether the court's other findings support the conclusion that Robinson's offense occurred after August 1, 1989. Thus we remand the issue of sentencing back to the trial court. On remand, the trial court must make findings independent of the jury's answer. If the trial court finds Robinson's offense occurred after August 1, 1989, Robinson will still be subject to the mandatory 37-year prison term. Otherwise, Robinson must be sentenced pursuant to the Sentencing Guidelines or an appropriate departure from the guidelines.

## C.

We hold the imposition of a 37-year prison term for repeat sex offenders under Minn.Stat. § 609.346, subd. 2a is not cruel and unusual punishment. In reviewing such a claim we must consider:

1. the gravity of the offense and the harshness of the penalty;
2. the sentences imposed on other criminals in the same jurisdiction; and
3. the sentence imposed in other jurisdictions.

*Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983).

These factors do not suggest Robinson's sentence is cruel and unusual. Subdivision 2a is designed to punish recidivist criminal sexual conduct. Thus we must review Robinson's sentence in light of his past behavior. Robinson's previous convictions clearly support the harsh sentence mandated by the legislature. Moreover, the legislature has the inherent authority to determine sentences. *State v. Osterloh*, 275 N.W.2d 578, 580 (Minn.1978).

At sentencing, the trial court ruled that if Robinson's 37-year prison term was not held up on appeal, it intended to durationally depart from the Sentencing Guidelines and sentence Robinson to the statutory maximum term of 20 years. *See* Minn. Stat. 609.343, subd. 2. Since we have remanded the issue of sentencing without determining whether Robinson is subject to the 37-year prison term, we decline to address the trial court's alternate sentence in this appeal.

We have considered the arguments Robinson raised in his pro se brief and we find them unpersuasive.

## DECISION

Robinson was not prejudiced by his exclusion from H.R.'s competency hearing and the *Spreigl* evidence was properly admitted. As to sentencing, we hold Robinson is subject to the mandatory 37-year prison term if his offense occurred after August 1, 1989. Because the trial court considered the jury's answer to the interrogatory, after giving an erroneous jury instruction, we reverse Robinson's sentence and remand to the trial court for resentencing. On remand, the trial court must make independent findings of fact to support the sentence it imposes on Robinson.

Affirmed in part, reversed in part and remanded.